Opinion issued May 11, 2006










     




In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00434–CR




ERIC D. MCCOVERY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 953373




MEMORANDUM OPINION

          A jury convicted Eric D. McCovery, appellant, of aggravated sexual assault,
and assessed punishment at 30 years in prison. See Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(iii) (Vernon Supp. 2005). On appeal, appellant argues that (1) the
evidence was factually insufficient to support the conviction, (2) the evidence was
legally insufficient to support the conviction, (3) the trial court erred in allowing
unreliable scientific expert testimony, (3) the trial court erred in allowing extraneous
offenses or other bad acts, and (4) the trial court erred in allowing the State to make
improper jury arguments during the punishment proceeding of the trial.
          We affirm.
Background
          On April 13, 2003, D.C., the complainant, spent the night at the apartment of
Marilyn Doughty together with Doughty and three other individuals. D.C. was 13 at
the time. Doughty slept on the couch in the living room as D.C. and three other
people slept in the middle room of the three-bedroom apartment. Appellant arrived
at the apartment to sleep between 2:00 a.m. and 3:00 a.m.
          While sleeping on the floor, D.C. awoke when he felt someone’s mouth on his
penis. Because the room was dark, he was unable to see whose mouth was touching
him. D.C. felt the top of the person’s head, which felt curly. Appellant had curly hair
at the time. D.C. ejaculated on his boxer shorts. When the bedroom door opened,
D.C. recognized the shape of appellant’s body as the person leaving the room. 
Afterwards, D.C. woke Doughty, telling her what had happened. D.C. told her that
he did not know who touched him but that he thought it was appellant. The following
evening, D.C. reported the incident to his mother, who notified the Pasadena Police
Department. 
          Swabs and smear samples were collected from D.C., along with the underwear
he had worn at the time of the incident. The swabs and smear samples did not reveal
any DNA besides D.C.’s, but a discoloration was noticed on the underwear. Dr.
Sujathat Yarlagadda conducted the DNA analysis on the collected samples. She
compared her results to the buccal swabs obtained from appellant, who gave his
voluntary consent to take a DNA sample. The results indicated that both D.C.’s and
appellant’s DNA were found on the underwear. The sperm on the underwear
belonged to D.C., and saliva was also present. DNA testing also revealed a possible
third DNA donor on the underwear. Dr. Robert Benjamin, an associate professor at
the University of North Texas, testified on behalf of the defense that the saliva found
on the underwear did not conclusively belong to appellant. 
          D.C. testified at trial to the events that occurred on April 13, 2003. The date
that he gave as his birthday was April 4, 1989, but the date that his mother gave as his
birthday during her testimony as well as the date of birth on the Child Assessment
Center forms was April 30, 1989. D.C. testified that he remembered telling people
that he thought he was dreaming about being in bed with a woman before the
incident.
          Appellant testified that he slept at Doughty’s apartment on the night in
question, and he entered the middle room where the four people were sleeping in
order to get a blanket. He slept in Doughty’s bedroom and, before leaving at
approximately 6:00 a.m. the same morning, he placed his blanket on D.C. before
leaving the apartment. Appellant denied that his mouth made contact with D.C.’s
penis. 
          During the punishment proceedings, N.S., a sixteen-year-old friend of the
family, testified that a similar incident occurred between him and appellant at
Doughty’s apartment. N.S. stated that, at the age of 13 while sleeping in the living
room, he awoke to find appellant attempting to unzip his pants. When N.S. later
confronted appellant, appellant responded that it was an accident. 
          Dr. Lawrence Thompson, Jr., the director of therapy psychological services at
the Children’s Assessment Center, testified generally about the treatment given to
both children that have been sexually abused and sexual offenders. Dr. Thompson
specifically stated that no cure exists for sexual offenders and that the results and
feelings from being abused could last for a victim’s entire life. Legal Insufficiency
          In his second point of error, appellant argues that the evidence was legally
insufficient to support a finding of guilt. 
A.      Standard of Review
          In a legal sufficiency review, we review the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). We give great deference to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996). The review for circumstantial evidence is the same as it is
for review of cases in which direct evidence exists. Kutzner v. State, 994 S.W.2d 180,
184 (Tex. Crim. App. 1999). Circumstantial evidence, by itself, may be enough to
support the jury’s verdict. Id.
B.      Analysis
          A person commits aggravated sexual assault if that person “causes the sexual
organ of a child to contact or penetrate the mouth . . . of another person, including the
actor” and “the victim is younger than 14 years of age.” Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(iii), (a)(2)(B). 
          Appellant argues that the evidence is legally insufficient to establish that he 
made contact with D.C. by placing his mouth on D.C.’s penis and that D.C. was
younger than 14 years old at the time of the incident. 
          1.       Contact
          The evidence viewed in the light most favorable to the prosecution shows that
D.C. testified to feeling someone’s mouth on his penis during the early morning hours
of April 13, 2003. Although there were other people sleeping in the same room as
D.C., D.C. felt the curly head of someone touching his penis, and he identified the
shape of the body leaving the room after the act. D.C. identified appellant, whose
hair was curly at the time. Moreover, appellant’s DNA was found on the underwear
that D.C. was wearing that morning. 
          We hold that the testimony along with the DNA analysis from the underwear
was legally sufficient for a rational jury to conclude that appellant caused his mouth
to touch the penis of D.C. 
          2.       Age
          The evidence showing that D.C. was under 14, when viewed in the light most
favorable to the prosecution, establishes that the event occurred on the morning of
April 13, 2003. D.C.’s mother testified that D.C.’s birthday was April 30, 1989. 
Likewise, D.C.’s birthday is supported by the documents from the Child Assessment
Center, which indicate that his birthday is April 30, 1989. We hold that a rational
jury could have concluded that appellant was younger than 14 years of age at the time
of the incident.
          We overrule appellant’s second point of error.
Factual Insufficiency
          In his first point of error, appellant argues that the evidence was factually
insufficient to support a finding of guilty. Appellant suggests that the State’s use of
scientific evidence to prove that appellant made contact with D.C. was not established
beyond a reasonable doubt.
A.      Standard of Review
          In a factual sufficiency review, we review all the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The jury is the exclusive judge
of the facts, the credibility of the facts, the credibility of the witnesses, and the weight
to be given to the witness’s testimony. Jaggers v. State, 125 S.W.3d 661, 671 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). Conflict in the evidence is to be resolved
by the jury. See Cain v. State, 958 S.W.2d 404, 408–409 (Tex. Crim. App. 1997). 
A jury decision is not manifestly unjust because the jury resolved conflicting views
of evidence in favor of the state. Id. at 410. In conducting a factual sufficiency
review, we must discuss the evidence that, according to appellant, most undermines
the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
B.      Analysis
          To support the State’s theory of contact, Dr. Yarlagadda testified to the results
of the DNA analysis of the sexual assault kit compared to the samples taken from
D.C. and from appellant. Dr. Yarlagadda determined that the discoloration on the
underwear that D.C. wore at the time was the result of DNA contributed by D.C.,
appellant, and a possible third donor. One of the samples was D.C.’s sperm, and
another sample was saliva. 
          In opposition, Dr. Benjamin, appellant’s medical expert, testified that the
mixture of DNA could have been the result of overlay, which supports appellant’s
theory that he placed a blanket on D.C. Although the defense did not conduct
independent testing on the underwear or the samples taken from the sexual assault kit,
Dr. Benjamin testified that, in his opinion, the Harris County Medical Examiner’s
results did not conclusively prove that the saliva belonged to appellant.
          The jury’s decision is not manifestly unjust merely because the jury resolved
conflicting views of evidence in favor of the State. Cain, 958 S.W.2d at, 410. From
the testimony and the test results adduced at trial, we hold that the evidence was
factually sufficient to support the conviction. Although some conflicting evidence
was presented, the contrary evidence was not so strong that the fact-finder could not
have determined beyond a reasonable doubt that appellant placed his mouth on D.C.’s
penis.
          We overrule appellant’s first point of error.
Unreliable Scientific Expert Testimony
          In his third point of error, appellant argues that the trial court erred in admitting
into evidence unreliable scientific expert testimony. Appellant specifically questions
the reliability of testimony given by Dr. Yarlagadda during the guilt-innocent phase
and by Dr. Thompson during the punishment phase.
          In order to preserve a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion. 
Tex. R. App. P. 33.1. A timely, specific objection is required to allow the trial court
an opportunity to rule on the complaint and correct any error that may have occurred. 
Mosley v. State, 931 S.W.2d 670, 674 (Tex. App.—Houston [14th Dist.] 1996, pet.
ref’d). “[W]hen it seems from context that a party failed effectively to communicate
his desire, then reviewing courts should not hesitate to hold that appellate complaints
arising from the event have been lost.” Lankston v. State, 827 S.W.2d 907, 908 (Tex.
Crim. App. 1992).
          Appellant failed to object to Dr. Yarlagadda’s testimony and to Dr.
Thompson’s testimony. Therefore, appellant waived these arguments.
          We overrule appellant’s third point of error.Evidence of Extraneous Offenses
          In his fourth point of error, appellant argues that the trial court erred in
admitting into evidence extraneous offenses or other bad acts committed by appellant. 
Specifically, appellant contends that the State failed to include an act involving
another minor, N.S., in any of its three “Notices of Intention to Use Extraneous
Offenses and Prior Convictions.”
          Even if the facts support a meritorious argument as to whether N.S. was
included within the State’s intended witness list, appellant did not make a timely
objection to the admission of the evidence or the testimony of N.S. See Tex. R. App.
P. 33.1. Therefore, appellant’s complaint is waived.
          We overrule appellant’s fourth point of error.
Improper Jury Instructions
          In his fifth point of error, appellant contends that the trial court erred when it
allowed the State to make improper closing arguments during the punishment
proceedings that adversely affected Appellant’s constitutional rights.
          Appellant did not object to the statements made during the State’s closing
argument that form the basis of his fifth point of error. A timely objection is
necessary to preserve error for appeal. Id. Therefore, appellant has waived his right
to complain of the arguments on appeal. Threadgill v. State, 146 S.W.3d 654, 670
(Tex. Crim. App. 2004) (holding error not preserved without objection even for
manifestly improper closing arguments).
          We overrule appellant’s fifth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Taft, Higley, and Bland.
Do not publish. See Tex. R. App. P. 47.2(b).